PHILIP CHERRY and HELEN CHERRY, his wife, complainants,

*v.*

ORTH & COAN, INCORPORATED, et al., defendants.

[Decided March 12th, 1932.]

*Mr. William L. Rae,* for the complainants.

*Mr. Jerome J. Dunn (Mr. John W. Ockford,* of counsel), for the defendant Albert R. Winans.

*Messrs. Hollander & Leichter,* for the defendant William Cadel.

LEWIS, V. C.

Complainants Philip and Helen Cherry executed a mortgage to defendant Cadel. The Cherrys were the original obligors on the bond. The premises were conveyed to defendant Winans through several *mesne* conveyances, in each case the grantee assuming payment of the bond. Cadel foreclosed the mortgage while Winans was in possession as owner of the equity. On August 2d, 1928, the premises were sold by the sheriff for approximately $10,000 less than the amount of the mortgage plus a prior mortgage for approximately $5,000. The premises were bid in by Macharwin Company, Incorporated, of which corporation Winans was president. The corporation was short of funds with which to complete the sale and take title. Under these circumstances Cadel

was applied to and advanced approximately $7,000 to complete the financing necessary to consummate the sale. This $7,000 was paid to the sheriff on December 24th, 1928, and the premises were conveyed to the corporation by sheriff's deed dated August 17th, 1928.

After satisfying the prior mortgage and crediting on the mortgage to Cadel the net proceeds of the sheriff's sale, there remained due to Cadel a deficiency in the amount of $10,255.45.

On January 14th, 1929, Cadel began an action at law against the complainants for the amount of this deficiency and secured a judgment. Cadel and the Cherrys made an arrangement whereby in payment of the judgment, the Cherrys executed and delivered a mortgage on other property in the sum of $5,000. The mortgage has since been reduced by payments to $3,000.

It is well settled that where there are one or more conveyances in which the grantee assumes an existing mortgage, each grantee in turn becomes in equity the principal debtor and that each of the grantors becomes in turn surety for his successors in title. The sureties, which complainants became by the operation of this rule, have the right to compel the person ultimately liable to make satisfaction. *Binns* v. *Baumgartner, 105 N. J. Eq. 58; Irick* v. *Black, 17 N. J. Eq. 189.*

Were this the ordinary case of a surety who has been called upon to pay his principal's debt, disposition of the matter would be simple. But Winans claims that one effect of his transaction with Cadel as to the $7,000 loan was to release Winans from any liability for any deficiency on Cadel's mortgage. Cadel disputes this contention. Winans further contends that the giving of the $5,000 mortgage by the Cherrys was after the release of Winans and therefore, as far as Winans was concerned, was a mere payment by a volunteer, so that the Cherrys' sole recourse should be against Cadel for restitution. The Cherrys made settlement with Cadel by giving the $5,000 mortgage in ignorance of the transaction claimed to operate as a release. Cadel claims that the trans-

action between him and Winans was not a release and that Winans remains liable for the full deficiency around $10,000, less a credit on account of the $5,000 mortgage.

If this last mentioned contention of Cadel is sustained, the Cherrys will be required to meet the $5,000 mortgage, and in such event can compel reimbursements from Winans. It seems clear that the Cherrys are entitled to relief against either Cadel or Winans. To decide which one must reimburse complainants, requires an examination of the document claimed to operate as a release and the determination of the effect of the transaction.

If this document, which bears date of December 24th, 1928, but actually executed on January 29th, 1929, has the effect of a release, complainants as sureties for Winans were discharged by the release of Winans, the principal debtor. In such case Cadel had no right to seek payment from complainants, who then would be entitled to reimbursement from Cadel for the $2,000 paid him and the cancellation of the mortgage on which $3,000 is still unpaid. If, on the other hand, Winans was not released, complainants' sole recourse is against him.

At the time Cadel advanced $7,000 on December 24th, 1928, Winans was already liable to Cadel for the $10,000 deficiency on the sheriff's sale. By the time the agreement was reduced to writing and actually signed on January 29th, 1929, Cadel had on January 14th, 1929, instituted suit at law against complainants. This fact is expressly referred to in the agreement, so it must have been known to Winans.

The agreement executed January 29th, 1929, was between Cadel, Winans and Macharwin Company, Incorporated. It referred to the fact that a new mortgage from a building and loan company proposed to be placed on the premises would be $7,000 short of the amount necessary to take up the sheriff's deed, and sets forth that the other parties had requested the aid of Cadel in procuring the sheriff's deed. Cadel agreed to provide the $7,000, which in fact he did. Winans and the Macharwin Company agreed to and in fact did deliver to Cadel their note for $7,000. The note was to be paid at

the rate of at least $100 a month with a provision for additional payments from income of the property. The note was to come due in three months, and three renewals each of three months were provided for, with a provision that final payment should be made on or before the first day of January, 1930.

Paragraph 15, of the agreement, reads as follows:

"15. It is further understood and agreed that upon payment of the aforesaid note, together with lawful interest thereon by the parties of the first part (Winans and the Macharwin Company) to the party of the second part (Cadel), the party of the second part will release Albert R. Winans, one of the parties of the first part of and from any claim which he might have against him by reason of the deficiency resulting from the sale of the aforesaid property by the Sheriff of Hudson County on August 2, 1928."

This was not an accord and satisfaction of the liability of Winans to pay the deficiency, for there was no satisfaction. The terms of the fifteenth paragraph expressly negative any possible claim that the agreement was intended as an instant release of Winans, since the language is that "upon payment of the note the party of the second part [Cadel] *will* release Winans from the deficiency."

Nor was the agreement a novation. In a novation a new obligation takes the place of a former one which is thereby extinguished. Here the agreement provided for a survival, for the extinguishment of the old debt was conditioned on performance of a future act by Winans. *Cook* v. *McAdoo, 85 N. J. Law 692.*

At most then, the agreement to release Winans from the deficiency was an executory agreement conditioned upon payment of the note in accordance with the terms of the agreement. Winans has neither pleaded nor proved compliance with these conditions. The great bulk of the amount of the note still remains unpaid.

Since the conditions precedent to a release were not met, Winans was not released. This determination renders it unnecessary to decide whether in any event the provision for the release on the deficiency was not mere *nudum pactum,* as

being without consideration, because Winans and the Macharwin Company were in any event bound to repay the $7,000, and that such repayment could hardly support a promise to discharge a debt of $17,000.

Since Winans was not released by Cadel, complainants have no right of action against Cadel for reimbursement. They have, however, such a right against Winans. The pleadings are involved and somewhat irregular, due probably to the fact Cadel was not originally a party but was brought in long after on Winan's motion. On issues regularly framed and duly heard, it might be held that the judgment taken against the Cherrys was not satisfied in full by the giving of the $5,000 mortgage, and they may possibly be liable to Cadel for the difference.

I shall advise a decree directing Winans in the first instance, and in turn the other defendants who are intermediate grantees, to reimburse complainants for the amount of the $5,000 mortgage, reserving to complainants any rights they may have to further reimbursement in case they are subsequently called upon to make further payment to Cadel.

Submit decree on notice.